UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:04-CR-294-1-F
No. 5:08-CV-154-F

KAMAL MAJEID WEBB,                    )
                Petitioner            )
                                      )
        v.                            )              O R D E R
                                      )
UNITED STATES OF AMERICA,             )
                Respondent.           )

On March 22, 2008, Kamal Webb ("Webb"), through counsel, filed a Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 [DE-60]. The Government filed a Motion to Dismiss or for Summary Judgment [DE-68], and Webb filed a Response [DE-71]. The matter is ripe for disposition.

Webb pled guilty on April 25, 2004, to possession with intent to distribute more than 50 grams of cocaine base, and to possession of a firearm by a felon. The United States Probation Officer who prepared his Presentence Report ("PSR") calculated his total Offense Level to be 37 (which afforded him a three-point downward adjustment for acceptance of responsibility), and determined his criminal history category to be IV.

PERTINENT FACTS

Webb's sentencing hearing was begun three times and continued twice. The transcript for the proceedings encompasses three volumes. The court received extensive testimony, heard zealous arguments by counsel for both parties, and perused an assortment of documents proffered by Webb to demonstrate that cash seized from him was earned legitimately. At the conclusion of the evidence and arguments, the court rejected Webb's version of the facts material to the determination of his sentence, and advised Webb, inter alia, that he might be

subject to a perjury prosecution.[1] Except that the court, at the Government's suggestion, deducted a quantity of crack cocaine that had been attributed to Webb by Edward Reath, and declined to award Webb a three-point reduction for acceptance of responsibility, the court adopted the findings of the PSR. Webb's resulting offense level of 40 and criminal history category of IV produced an advisory Guideline range of 360 months - life imprisonment on Count One. The advisory Guideline range for Count Three was 120 months. After having considered the factors set forth in 18 U.S.C. § 3553(a) in light of evidence received and the parties' arguments, the court sentenced Webb 360 months on Count One and imposed a concurrent 120-month on Count Three.

Webb's timely § 2255 motion raises three grounds for relief. First, he contends that the Government engaged in prosecutorial misconduct by violating the terms of his plea agreement. Next, he argues that his lawyer was ineffective in three respects during sentencing. Finally, he contends that his allegations entitle him to an evidentiary hearing.

### 1. Prosecutorial Misconduct

Webb argues that the Government violated its promise to afford him the opportunity to earn a motion for downward departure for substantial assistance pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Rule 35, Federal Rules of Criminal Procedure. Specifically, he contends that his plea agreement contained a promise by the Government that law enforcement officers would interview him . He complains, however, that no officer ever made the effort to debrief or interview him, and that he was denied his right to earn a substantial assistance motion. "As outlined in the Petitioner's affidavit, he desired to sit down with the authorities, and in fact contacted his attorney on numerous occasions to set something up. According to his counsel,

---

[1]    Only a review of Webb's PSR and the sentencing proceeding transcripts can afford a full appreciation of the nature and tenor of Webb's contentions supporting his objections to the PSR.

the Government refused to allow the Petitioner to debrief, indicating that the Petitioner had nothing they needed." Webb's Memorandum in Support of § 2255 motion [DE-60], pp. 3-4. Webb further contends that Assistant United States Attorney Jackson falsely stated at sentencing that Webb had been interrogated but had not provided substantial assistance.

The Government has filed in support of its Motion to Dismiss or for Summary Judgment [DE-68] the affidavit of Sgt. Charles Rosa of the Raleigh, NC, Police Department, who had been a Task Force Officer with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives during the times pertinent to Webb's case. He had been involved in the investigation of Webb's criminal activity since August 16, 2003. Rosa avers, inter alia, that

> 3. After [Webb] entered his plea agreement with the Government on April 25, 2004, I personally contacted Mr. Webb on several different occasions to attempt an interview and a debriefing.
>
> 4. Each time I made contact, Mr. Webb let me know in the strongest terms that he had no desire to talk with me and to provide information.
>
> 5. Each time Mr. Webb repeatedly refused to cooperate, I conveyed his unwillingness to AUSA Jane Jackson, the prosecutor for the case.
>
> 6. Any failure to cooperate and provide substantial assistance information is solely attributable to Mr. Webb and not to the prosecution, because he was given multiple opportunities to be debriefed.

Affidavit of Charles Rosa, Exhibit A to Government's Memorandum in Support of Motion to Dismiss or for Summary Judgment [DE-69], p. 1.

The provision of Webb's Memorandum of Plea Agreement that he contends is a promise by the Government to debrief him is as follows:

> [The United States agrees] that it will make known to the Court at sentencing the full extent of the defendant's cooperation, but the United States is not promising to move for departure pursuant to U.S.S.G. § 5K1.1, 18 U.S.C. § 3553(e), or Fed. R. Crim. P. 35.

Paragraph 4e, Memorandum of Plea Agreement [DE-23], p. 8. Consistent with this provision, at the beginning of Webb's sentencing hearing the Assistant United States Attorney

3

acknowledged that the Government had promised to advise the court of the extent of Webb's cooperation. She fulfilled the promise by reporting to the court that Webb had not cooperated and therefore had not rendered substantial assistance, and that the Government had not promised that it would return to court with a Rule 35 motion for subsequent substantial assistance.

Fifteen years ago, in an appeal from a case originating before the undersigned, the Fourth Circuit Court of Appeals examined a similar clause in the Memorandum of Plea Agreement form then used by the United States Attorney's Office in this district. The plea agreement in that case stated in pertinent part that the Government:

> will make known to the Court at the time of sentencing the full nature and [extent of the Defendant's] cooperation,[2] including whether the Government considers the Defendant to have substantially assisted authorities. The Government, however, is not promising to move for a departure pursuant to 18 U.S.C. § 3553(e) or U.S.S.G. § 5K1.1.

*United States v. Ringling*, 988 F.2d 504, 505 (4th Cir. 1993). During the interval between entry of Ringling's guilty plea and his sentencing hearing, the Government refused to arrange for his debriefing. The appellate court remanded the case for resentencing because it determined that "[t]his provision implicitly required the Government to debrief Ringling prior to sentencing in order that the Government could make known "at the time of sentencing" the extent of Ringling's cooperation." *Id.*

The only difference in the language of Webb's plea agreement and that of Ringling is the omission in Webb's of the phrase, "including whether the Government considers the Defendant to have substantially assisted authorities." The Government did advise the court at Webb's sentencing hearing that Webb had not provided "substantial assistance."

---

[2]     The original *Ringling* opinion omitted the bracketed words, but they were included in the quotation contained in the opinion on appeal after remand, *United States v. Ringling*, No. 93-5554, 1994 WL 387888 (4th Cir. July 26, 1994).

The court has been unsuccessful in locating any 4th Circuit opinion addressing whether the "new" plea agreement language, as used in Webb's case, constitutes a promise or obligation by the Government to debrief a defendant subsequent to execution of the plea agreement. In support of its Motion to Dismiss or for Summary Judgment, the Government here does not contend that the "new" language is materially different from that in Ringling's plea agreement; rather, the Government argues that Webb in fact *was* given opportunities to cooperate but that he emphatically refused.

Assuming *without deciding* that Webb's plea agreement, like Ringling's, obligated the Government to interview or debrief him in order to afford him the opportunity to cooperate, the court finds that the Government met its obligation to do so. The undersigned has had adequate opportunity to observe Webb, hear his sworn testimony concerning matters material to sentencing, and to assess his credibility. To the extent that the affidavits herein create a question of fact, the court confidently can declare that its conclusion as to Webb's veracity, as compared with that of Assistant United States Attorney Jane Jackson and Sgt. Rosa, will not be altered by an evidentiary hearing. The undersigned found Webb "incredible," suggesting that his testimony at sentencing might earn him a perjury prosecution.[3] The court credits Sgt. Rosa's account of the Government's efforts to afford Webb an opportunity to earn a motion for downward departure. *See* Transcript of December 12, 2005, Sentencing Hearing , pp. 62, 67, 79. *See United States v. Clark*, No. 96-4717, 1997 WL 205770 (4th Cir. April 25, 1997) ("Clark was given an opportunity to cooperate, yet he was ill-tempered and uncooperative and provided no valuable information. The Government was not then obligated to give Clark additional

---

[3] The record herein vividly demonstrates the undersigned's outright rejection of Webb's testimony during his sentencing hearing, and its suspicion that the "documentation" supporting his position that he legitimately earned seized cash was fabricated. *See also, e.g.*, Probation Officer's Response to Webb's Legal/Guideline Applications Objection to Pages 5 and 15, Paragraphs 1, 13, and 68, Revised Presentence Investigation Report dated July 26, 2005.

5

opportunities to provide substantial assistance. Therefore, the plea agreement was not breached.").

The court has considered Webb's assertions and affidavits concerning his opportunity to cooperate, as well as those of the Government, as set forth in Sgt. Rosa's affidavit appended to the Government's Memorandum herein, and concludes that a preponderance of the credible evidence supports the Government's recitation of the relevant events. Webb had ample opportunity to be debriefed by Government officials but chose not to avail himself thereof. There is no factual basis for Webb's first ground for § 2255 relief.

### 2. Ineffective Assistance of Counsel

The record demonstrates that Webb likewise is not entitled to relief on any of the three grounds he raises for § 2255 relief for ineffective assistance of counsel at sentencing.

(a) Webb first argues that his counsel should have, but did not, argue that the Government's evidence was insufficient to support the conversion of seized cash into drug quantity for purposes of calculating his advisory Guideline range. It is his position that his lawyer improperly assumed the burden of proving the inadequacy of the Government's evidence rather than holding the Government to its burden of proving that its evidence was sufficient.

At sentencing, the defendant has the burden to produce a preponderance of the evidence to support his objection to factual matters contained in his PSR. *See United States v. Randall*, 171 F.3d 195, 211 (4th Cir. 1999); *United States v. Terry*, 916 F.2d 157, 160 (4th Cir. 1990). According to Terry, the PSR may form the basis for the court's factual findings on disputed factual issues unless the defendant shows "that the information in the PSR is unreliable, and articulate[s] the reasons why the facts contained therein are untrue or inaccurate." *Id.* at 162. "The burden is on the defendant to show the inaccuracy or unreliability of the PSR." *Id.*; *see also United States v. Morris*, 429 F.3d 65, 71 (4th Cir. 2005) (sentencing decisions based on a preponderance of the evidence comport with Sixth Amendment requirements), *cert. denied*,

6

___ U.S. ___, 127 S. Ct. 121 (2006). *Cf. United States v. Robinson*, No. 06-5207, 2008 WL 2388618 (4th Cir. June 12, 2008) (in calculating drug amounts, the court may consider any relevant information that bears sufficient indicia of reliability to support its accuracy).

Conversion of money derived from drug trafficking to its equivalent drug amount is permissible. *See United States v. Hicks*, 948 F.2d 877, 882-83 (4th Cir. 1991) (a sentencing court is entitled to utilize the "drug equivalent" of drug-related cash in calculating drug quantity for sentencing purposes if there is evidence of a connection between the money seized and the drugs); *see also United States v. Viar*, No. 06-4171, 2008 WL 1043979, slip op. at 8 (4th Cir. May 5, 2008). Here, the court determined that Webb's PSR contained reliable factual findings adequately demonstrating a nexus between the cash seized from Webb and the drugs attributed to him. *See United States v. Hyman*, 96-4855, 1998 WL 200320 (4th Cir. April 27, 1998), *cert. denied*, 525 U.S. 903 (1998).

Webb admits he reported no self-employment income and paid no income taxes for 2003 or 2004, the years in which the $5,400 cash and $10,000 cash, respectively, were seized from him. *See United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir.) ("evidence of unexplained wealth is relevant in a narcotics prosecution as evidence of illegal dealings and ill-gotten gains") (citation omitted), *cert. denied*, 479 U.S. 845 (1986); *see also United States v. Branch*, No. 98-4257, 1998 WL 911698 (4th Cir. Nov. 30, 1998).

It was Webb's position at sentencing, however, that the seized cash had been earned legitimately. During the August 17, 2005, sentencing hearing, Webb produced materials that he asserted, through counsel, documented the legitimacy of the cash. However, because the material had not been shared with the Probation Officer who prepared the PSR, Webb's sentencing hearing again was continued to afford the Probation Officer an opportunity to investigate the documents. The court added that if the Probation Officer determined Webb's

Case 5:04-cr-00294-F   Document 74   Filed 08/13/08   Page 7 of 11

financial "affidavit is incorrect, I'll expect him to be prosecuted for perjury. You can't go both ways in this court." Transcript of August 17, 2005, Sentencing Hearing, pp. 11, 12.[4]

Webb advanced the argument when his sentencing hearing resumed on September 19, 2005, that the $10,000 cash seized from his vehicle following his arrest on May 15, 2004, constituted the gross proceeds of a social event that he had "promoted" the previous night. *See* Transcript of September 19, 2005, Sentencing Hearing, pp. 54, 74-88. The court heard both parties' evidence concerning Webb's purported livelihood, as well as the testimony of the individual who had coordinated the event (which in fact had occurred a week before Webb's arrest), and found Webb unworthy of belief. The preponderance of the evidence that the court deemed truthful supported the Government's position that the cash found in Webb's possession was related to his drug trafficking. It was encumbent upon Webb to demonstrate, by a preponderance of the evidence, that such information was untrue or unreliable. His lawyer did not render ineffective assistance for attempting to do so.

Webb further claims that his lawyer's efforts to disprove the Government's evidence in this regard resulted in a two-point adjustment for obstruction of justice. The record herein amply demonstrates that Webb earned that adjustment all by himself. *See, e.g.*, Transcript of

---

[4] During the August 17th hearing, the court noted that Webb had completed a form financial affidavit, under oath, seeking the appointment of counsel in this case.

> THE COURT: - - he has signed an affidavit and you can prosecute him for perjury if this is false, Ms. Jackson. This cuts both ways. He signed an affidavit, "Have you received in the past 12 months any income from a business, profession or other form of self-employment or in the form of rent payments, interest, dividends, retirement, annuity payments and other sources?" The answer is no. And he signed that under oath.

The court later abandoned the false affidavit theory after reviewing the wording of the CJA 23 Affidavit and discussing it with the AUSA. *See* Transcript of September 19, 2005, Sentencing Hearing, pp. 8-12.

8

September 19, 2005, Sentencing Hearing, pp. 48-88; and December 12, 2005, Transcript of Sentencing Hearing, pp. 64-66, 77.

(b) Next, Webb contends that his lawyer rendered ineffective assistance for failing to object when the court sentenced him based solely on the advisory Guideline calculations, and without consideration of the § 3553(a) sentencing factors. Webb is mistaken. The court announced that the sentence was imposed pursuant to the Sentencing Reform Act of 1984, excluding 18 U.S.C. §§ 3553(b) and 3742(e) (which provisions were held to be unconstitutional as effectively rendering the Guidelines mandatory). The court further stated for the record that the 360 month sentence, which was the very bottom of the advisory Guideline range, had been selected because of Webb's young age. Webb himself acknowledged that "Although each factor under 3553(a) must be considered, a sentencing court need not 'robotically tick through' every subsection of the statute." Memorandum in Support of § 2255 Motion [DE-60], p. 9 (quoting *United States v. Montes-Pineda*, 445 F.3d 375, 380 (4th Cir. 2006), *cert. denied*, ____ U.S. ____, 127 S. Ct. 3044 (2007)). The court's comments during the sentencing hearing, together with its findings in imposition of the sentence, are " 'elaborate enough to allow an appellate court to effectively review the reasonableness of the sentence.' " *Id.*

(c) Finally, Webb contends that his counsel was ineffective for failing to object to the court's imposition of a two-point enhancement for obstruction of justice. Webb suggests that the obstruction of justice enhancement arose from the court's belief that Webb had directed Edward Reath to appear at the police station and claim ownership of a firearm seized from Webb. However, the transcripts of the various sentencing proceedings reveal that the court, the Government and the USPO initially were concerned with Webb's sworn responses to questions contained in a CJA Form 23 application for pauper status, and those posed by the USPO concerning Webb's financial and employment status. *See, e.g.*, Transcript of August 17, 2005,

9

Sentencing Hearing , pp. 7-9; Transcript of September 19, 2005, Sentencing Hearing, pp. 8-12, 88-97.

The court also disbelieved Webb's explanation that the sums of cash seized from his home and from his person were receipts from legitimate entertainment events that he had "promoted." *See* Transcript of December 12, 2005, Sentencing Hearing, p. 62. The Government's evidence at the December 12th hearing suggested not only that Webb's sworn testimony had been false, but that the documents Webb had presented to support the legitimacy of the cash were fake . *See generally id.*

Citing *United States v. Delaney,* 214 Fed. Appx. 356, 360 (4th Cir.), *cert. denied,* \_\_\_ U.S. \_\_\_, 128 S. Ct. 50 (2007), Webb contends that an adjustment for obstruction of justice under U.S.S.G. § 3C1.1 on the basis of a defendant's testimony requires a specific finding of perjury. The transcript of the first installment of Webb's sentencing hearing reflects that the court announced that Webb could "expect a perjury charge" if his responses to the CJA 23 questions were false. *See* Transcript of August 17, 2005, Sentencing Hearing, p. 11. After hearing Webb's testimony on September 19, 2005, and that of the Government's witnesses on December 12, 2005, the court declared, "I'm going to take away [Webb's] acceptance of responsibility. . . . I think he's incredible. Incredible. If there's been perjury committed in this courtroom, I would expect that there will be a prosecution for it." *See* Transcript of December 12, 2005, Sentencing Hearing , pp. 62, 67, 79. Webb's contention in the instant motion that the obstruction of justice finding was based on Reath's claiming the firearm, is just mistaken. *See id.,* p. 67 (court indicates "his obstruction" is not related to Reath's claiming the firearm).

The two-level increase for obstruction of justice was based on the court's determination that Webb had lied about the origin of the cash seized from him, that he had, at a minimum, withheld financial information from the USPO, and may have created and presented false documents in this court.

10

### 3. Evidentiary Hearing

For the reasons set forth above, the court finds that the record herein conclusively shows there are no factual issues that remain for resolution of Webb's claims. Accordingly, an evidentiary hearing is unnecessary. *See United States v. Witherspoon*, 231 F.3d 923, 925 (4th Cir. 2000) (evidentiary hearing required unless the motion and the files and the records of the case "conclusively show" that the petitioner is entitled to no relief). The undersigned has had repeated opportunities to assess Webb's credibility and his version of the "facts" underlying his conviction and conduct relevant to sentencing. The same factors support Webb's § 2255 motion. Another hearing will not improve the court's opinion thereof.

### SUMMARY

For the foregoing reasons, the Government's Motion to Dismiss or for Summary Judgment [DE-68] is ALLOWED, and Webb's § 2255 motion [DE-60] is DISMISSED.

SO ORDERED.

This the _13_ day of August, 2008.

JAMES C. FOX
Senior United States District Judge